UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
ABRAHAM FREUD,

                Plaintiff,

                                            **21-cv-02281 (MKY)(BR)**

    -against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION,
DOROTHY COLLINS, individually and in her official
capacity, RUDY E. GIULIANI, individually and in his official
capacity, and MARJORIE DALRYMPLE individually and in
her official capacity,

                Defendants.
----------------------------------------------------------------------------X

## **PLAINTIFF PRO SE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Abraham M. Freud
*Plaintiff Pro Se*
333 Argyle Road
Cedarhurst, NY 11516
917-402-4721
abefreud1@gmail.com

*Item*                               **TABLE OF CONTENTS**                               *Page*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-vii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-25

    POINT I: STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    POINT II: PLAINTIFF FILED A TIMELY NOTICE OF CLAIM . . . . . . . . . . . . . . . . 2-3

    POINT III: PLAINTIFF'S CLAIMS ARE NOT
    PARTIALLY TIME-BARRED BECAUSE HE
    WAS SUBJECTED TO A CONTINUING VIOLATION . . . . . . . . . . . . . . . . . . . . . . 4-6

    POINT IV: PLAINTIFF FAILS TO STATE A SELECTIVE
    ENFORCEMENT CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

    POINT V: THE AMENDED COMPLAINT STATES A
    CAUSE OF ACTION FOR DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . 8-12

        a. Plaintiff has plead a plausible claim for religious
        discrimination under 1983, Title VII, SHRL and CHRL . . . . . . . . . . . . . . . . . 9-12

            1. Plaintiff Suffered an Adverse Employment Action . . . . . . . . . . . . . 10-12

            2. Plaintiff has pleaded that there is an inference of
            discrimination related to his religion . . . . . . . . . . . . . . . . . . . . . . . 12

    POINT VI: THE CONDUCT IN AGGREGATE IS A
    PLAUSIBLE HOSTILE WORK ENVIRONMENT CLAIM . . . . . . . . . . . . . . . . . . . 12-15

i

POINT VII: PLAINTIFF'S FIRST AMENDMENT RETALIATION
CLAIM STATES A CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-18

    A. Plaintiff's First Amendment Retaliation Claim States a Cause of Action . . 15-18

        i. Plaintiff's Complaints were Protected Speech  . . . . . . . . . . . . . . . . 16-18

        ii. Plaintiff's Complaints Were Causally Related . . . . . . . . . . . . . . . . .  18

POINT VIII: PLAINTIFF STATES A CLAIM FOR RETALIATION . . . . . . . . . . . 18-25

    1. The Employee Was Engaged In Protected Activity . . . . . . . . . . . . . . . . . . . 19-20

    2. A Causal Connection Exists Between The Protected Activity And
The Adverse Employment Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-24

        (1) Plaintiff Suffered An Adverse Employment Action  . . . . . . . . . . . 24-25

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

## <u>TABLE OF AUTHORITIES</u>

*Item*                                                                    *Page*

Laws and Statutes:

42 U.S.C § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

First Amendment Right to Free Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 16

New York City Human Rights Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 13

New York State Human Rights Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Title VII of the Civil Rights Act of 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 9, 12, 15, 25

Cases:

*Albright v. Oliver,*
510 U.S. 266,  1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Albunio v. City of New York,*
16 N.Y.3d 472, 477, 922 N.Y.S 2d 244 [2011] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Appel v. Spirfdon,*
531 F.3d 138, 140 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 1949 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bell Atl Corp. v. Twombly,*
550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bennett,*
92 A.D.3d 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iii

*Best v. New York City Dep't of Corr.,*
14 F. Supp. 3d 341, 351-52 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brash v. Richards,*
2021 NY Slip Op 03436 (NY 2nd Dept decided June 2, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Breuer v. Hart,*
909 F.2d 1035, 1039 (7th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Connick v. Myers,*
461 U.S. 138, 147-48 and n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) . . . . . . . . . . . . . . . . . . . 16

*Cornwell v. Robinson,*
23 F.3d 694, 703 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dr. Joseph Irrera v. University of Rochester,*
859 F.3d 196 (2nd Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Feingold v. New York,*
366 F.3d 138, 152-53 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fitzgerald v. Henderson,*
251 F.3d 345, 362 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Flores v. United States,*
885 F.3d 119, 121 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Garcetti v. Ceballos,*
547 U.S. 410, 421, 126 S. Ct. 1951, 1959-60, 164 L. Ed. 2d 689 (2006) . . . . . . . . . . . . . . . . . . 18

*Harris v. Forklift Systems, Inc.,*
10 U. S. 17, 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Henson v City of Dundee,*
682 F.2d 897, 904 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jordan v Bates Adv. Holdings, Inc.,*
(11 Misc 3d 764, 770-771 [Sup Ct., NY County 2006]) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kassner v. 2nd Ave. Delicatessen Inc.,*
496 F.3d 229, 237 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24

*Kasten v. Saint-Gobain Performance Plastics Corp.,*
563 US 1, 5-6 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lambert v.Genesee Hosp.,*
10 F.3d 46, 53 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lewis v. Cowen,*
165 F.3d 154, 163 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mandell v. County of Suffolk,*
316 F.3d 368, 379 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Massaro v. Bd. of Educ. of City Sch. Dist. of N.Y.,*
No. 18-2980-cv (2nd Cir. decided May 21, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20, 21, 25

*Mathirampuzha v. Potter,*
548 F.3d 70, 78 (2d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
715 F.3d 102, 110, n. 8 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*National Railroad Passenger Corp. v. Morgan,*
122 S.Ct. 2061 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*O'Connor v. Steeves, et al.,*
994 F.2d 905, 913-14 (1st Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Oncale v. Sundowner Offshore Services, Inc.,*
118 S. Ct. 998 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Patane,*
508 F.3d at 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pesce v. Mendes & Mount LLP,*
Case No. 19-cv-4922, 2020 WL 7028641, at *4 (S.D.N.Y. Nov. 30, 2020) . . . . . . . . . . . . . . . . 5

*Pickering v. Bd. of Educ.,*
391 U.S. 563, 568 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rasco v. BT Radianz,*
05 Civ. 7147(BSJ (SD NY Decided March 17, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Richardson v. New York State Dep't of Corr. Serv.,*
180 F.3d 426, 446-47 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rodgers v. Western-Southern Life Ins. Co.,*
12 F.3d 668, 674 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ruiz v. County of Rockland,*
609 F.3d 486, 491-92 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ruotolo v. City of New York,*
514 F.3d 184, 188 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*San Diego v. Roe,*
543 U.S. 77 at 83-84. (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Skehan v. Village of Mamaroneck,*
465 F.3d 96, 106 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Smith v. Kmart,*
1996 WL 780490 at *8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United Air Lines v. Evans,*
431 US 553, 14 FEP 1510 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Brennan,*
650 F.3d 65, 93 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Vance v. Southern Bell Tel. & Tel. Co.,*
863 F.2d 1503, 1511 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Wells v. Achievement Network,*
No. 18 Civ. 6588 (KPF), 2021 U.S. Dist. LEXIS 39828, 2021
WL 810220(S.D.N.Y. Mar. 2, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Williams v. NYC Hous. Auth.,*
61 A.D.3d 62 (1st Dep't 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 13, 14

*Woods v. Graphic Communications,*
Union Local 747, 925 F.2d 1195, 1201 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Zoulas v. N.Y.C. Dep't of Educ.,*
400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

## PRELIMINARY STATEMENT

Plaintiff pro se herein submits his memorandum of law in opposition to Defendants' motion to dismiss**.** Specifically, and as set forth more fully below, Plaintiff's Amended Complaint, timely notice of claim, and his claims are not time-barred.  Finally, Plaintiff states claims of religious discrimination, hostile work environment, and retaliation.[1]

## FACTUAL STATEMENT

Plaintiff commenced his employment with Defendant DOE on or around September 2001. (AC ¶ 15) P369@P67K is a specialized District 75 school which deals with multiple disciplinary problems of special needs and autistic populations. (AC ¶ 17) As a Special Education teacher, Plaintiff teaches a special class with a 6:1:1 ratio, which includes fourth and fifth grade students and includes two (2), one-to-one paraprofessionals and one classroom paraprofessional. (AC ¶ 18) To plaintiff's knowledge, Plaintiff is the only practicing Orthodox Jewish full-time Special Education classroom teacher at his school. (AC ¶ 19)

Despite Plaintiff's exemplary job performance, Plaintiff has become a target on the basis of his religion and retaliation. (AC ¶¶ 21-22)  Plaintiff asserts five causes of action : (1) pursuant to Title VII, (religion) 1983- selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's constitutionally protected conduct; (2) Unlawful Discrimination on the Basis of Plaintiff's Religion in violation of 42 U.S.C § 1983 and Title VII of the Civil Rights Act of 1964); (3) (Hostile Work Environment in violation of 42 U.S.C § 1983 and Title VII of the Civil Rights Act of 1964); (4) (Violation of the First Amendment Right to Free Speech); (5) (Retaliation in violation of 42 U.S.C § 1983 and

---

[1] Although I am pro se, I will be referring to myself  in the third-person in this memorandum of law.  In addition, I wish to advise the Court that although the final work product is mine, I did have legal assistance in helping me draft a response to Defendants' Motion to Dismiss.

Title VII of the Civil Rights Act of 1964). The amended complaint also asserts claims in each of the cause of action pursuant of the New York State Human Rights Law ("SHRL"), and the New York City Human Rights Law ("CHRL").

The factual predicate to the amended complaint is set forth in the argument section in order to avoid duplication.

## ARGUMENT

### POINT I

#### STANDARD OF REVIEW

Under the Federal Rules, a claimant must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). When deciding a motion to dismiss for failure to state a claim under Federal Rule 12 (b)(6), the court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor. See *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir. 2007). In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a Plaintiff must plead enough facts to state a claim to relief that is plausible on its face. See *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S. Ct. at 1950.

### POINT II

#### PLAINTIFF FILED A TIMELY NOTICE OF CLAIM

Defendants assert on page 7 of its brief that the last alleged discriminatory act prior to Plaintiff filing his notice of claim occurred on October 2, 2020, thus Plaintiff was required to file a Notice of Claim by December 31, 2020 and that Plaintiff file the Notice of Claim on June 9, 2021, thus making the notice of claim approximately five months and eleven days after the expiration of the ninety day notice of claim requirements.

However, on March 20, 2020, Governor Andrew Cuomo issued Executive Order 202.8, tolling New York's statute of limitations and other procedural deadlines until April 19, 2020.  The order stated: "Any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020." Thereafter, the governor repeatedly extended the civil tolling in Executive Order (EO) 202.8 by issuing various EOs, including most recently, dated October 4, 2020. EO 202.67 extended the civil tolling provisions to November 3, 2020, and stated that thereafter, this tolling would expire: The suspension in Executive Order 202.8, as modified and extended in subsequent Executive Orders, "hereby continued,…provided however, for any civil case, such suspension is only effective until November 3, 2020, and after such date any such time limit will no longer be tolled. Under EO 202.67, the statute of limitations will have been tolled in New York for 228 days.  Thus, the notice of claim was timely filed since the notice of claim was filed 160 days from the expiration of the 90 days' notice of claim period. See *Brash v. Richards,* 2021 NY Slip Op 03436 (NY 2nd Dept decided June 2, 2021).

## POINT III

### PLAINTIFF'S CLAIMS ARE NOT PARTIALLY TIME-BARRED BECAUSE HE WAS SUBJECTED TO A CONTINUING VIOLATION

The Supreme Court has stated that as long as a continuing violation exists, a plaintiff should be allowed to prove that he was subjected to a hostile work environment.  See *National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061 (2002).  Therefore, Plaintiff's claims cannot be barred because he was still subject to a present and continuing retaliatory hostile work environment.  The leading cases with regards to a "continuing violation" alleged by an employment discrimination plaintiff are *National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061 (2002) and *United Air Lines v. Evans*, 431 US 553, 14 FEP 1510 (1977).  In Evans, Justice Stevens stated that past discriminatory acts which are not themselves the basis of timely charges of discrimination by the Plaintiff nevertheless ". . . may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue. . ." In Morgan, the Court stated that hostile work environment claims are different in kind from discrete acts.  Because their very nature involves repeated conduct, the "unlawful employment practice," §2000e-5(e)(1), cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  See *Harris v. Forklift Systems, Inc.*, 10 U. S. 17, 21.

The continuing violation doctrine provides that "[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], ... the commencement of the statute of limitations period may be delayed until the last [violation]." *Flores v. United States*, 885 F.3d 119, 121 (2d Cir. 2018), *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (citations and internal quotation marks omitted) "To qualify as continuing, the claimed actions must not be discrete acts, but repeated conduct that occurs over a series of days or perhaps years." *Zoulas v.*

4

*N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019); "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v.Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (abrogated on other grounds by *Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 US 1, 5–6 (2011).

In *Pesce v. Mendes & Mount LLP*, a federal court denied a motion to dismiss and found that the employer's alleged multi-year failure to ensure that the employee could work "without fearing sexual harassment and assault" may be a continuing violation of Title VII. See *Pesce*, Case No. 19-cv-4922, 2020 WL 7028641, at *4 (S.D.N.Y. Nov. 30, 2020). Accordingly, an alleged incident in March 2018, which was timely because it occurred within 300 days of filing the EEOC charge, allowed the employee to use other instances that she claims took place in 2015 and 2017 to support her claim. A continuing violation arises when an employer allows "specific and related instances of discrimination . . . to continue unremedied for so long as to amount to a discriminatory policy or practice." Id. The instances of discrimination need not be "widespread" or part of a formal policy to constitute a continuing violation; a plaintiff can establish a continuing violation based on her employer's "inaction" in addressing sex-based discrimination against her alone. *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001) ("[T]he continuing violation theory may be applied where there is a showing of specific and related instances of discrimination against a single plaintiff." *Pesce* supra.

In the present case, the actions taken by the DOE in retaliation against Plaintiff have been continuing in nature, as far back as 2015 arising due to being an Orthodox Jew and in retaliation for his protected. Like in the *Pesce* case, the Appellant can establish a continuing violation based on his employer's "inaction".

See Point IV, V and VI of this brief for the continuous conduct directed at Plaintiff.

## POINT IV

### PLAINTIFF FAILS TO STATE A SELECTIVE
### ENFORCEMENT CLAIM

To state an equal protection selective enforcement claim pursuant to 1983, Plaintiff must allege that he was treated differently from a similarly situated individual based on "impermissible considerations such as [ ] religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Even under a less stringent standard, Plaintiff still must "identify comparators whom a prudent person would think were roughly equivalent." *Best v. New York City Dep't of Corr.*, 14 F. Supp. 3d 341, 351-52 (S.D.N.Y. 2014).

Defendants claim that the Amended Complaint lacks specific facts to support his selective enforcement claim and that no specific comparators were identified.  However, Plaintiff was employed in Special Education School in which all of the teachers are special education teachers and are teaching special education students.  The amended complaint is replete with reference to all other teachers in the school such as at the end of the school year, on or around June 2018, Plaintiff was relocated to another site for summer school 2018, for the second year in a row. Plaintiff was the only senior Special Education teacher to be moved to another site for summer school. Newly hired teachers and/or teachers with less seniority were afforded the ability to remain at their year-round school. This was extremely embarrassing for Plaintiff as a senior Special Education teacher. (AC ¶ 51) During the beginning of the 2018-2019 school year, Plaintiff was denied a password for the Unique Curriculum, in comparison to the fully equipped technology and passwords that were assigned to all other teachers except for Plaintiff. (AC ¶ 56)

From on or about September 2018 to December 2018, Plaintiff was kept isolated and deliberately not scheduled for grade level meetings, as they were always scheduled when Plaintiff

had a teaching conflict. Only after Plaintiff's numerous complaints was Plaintiff able to attend meetings wherein, he continually complained that he was being treated differently from the other teachers, particularly where curriculum was concerned. (AC ¶ 63) Plaintiff's position was undermined in not having any input in the development of an IEP goal and prevented from conducting his role as the teacher on record as it pertains to the legal requirement of goals being written. Without Plaintiff's knowledge and input, Coordinator Quirke established a newly created goal. (AC ¶ 67) Upon information and belief, no other Special Education teacher had ever been treated in such a way that they were not allowed to attend their own student's IEP meeting. (AC ¶ 68) Upon information and belief, all of the other classrooms were fully equipped with iPads with preloaded applications, charging stations, and safety/security storage boxes. On or around June 17, 2019, Horowitz finally went to Plaintiff's classroom and downloaded the necessary applications for the iPads. (AC ¶ 84) Again, Plaintiff was relocated to another site for summer school 2019, for the third year in a row. Plaintiff was the only senior Special Education teacher to be moved to another site for summer school. Newly hired teachers and/or teachers with less seniority were afforded the ability to remain at their year-round school. This was extremely embarrassing for Plaintiff as a senior Special Education teacher. (AC ¶ 86) Additionally, Plaintiff complained that Ms. Adams, a special education teacher at P369@P67K, was provided the same paraprofessional for several years including summer school. Plaintiff, however, has had his paraprofessionals changed every year. During the summer school year, Plaintiff had four (4) students requiring 1:1 paraprofessional, although Plaintiff only had two (2) paraprofessionals to work with. Of the paraprofessionals Plaintiff had during the summer school year, Plaintiff was provided with new paraprofessionals during the regular school year. (AC ¶ 90)

Furthermore, Defendant Collins would afford Ms. Adams the ability to leave school early

without signing out. According to Union representative, Malaros, there were multiple staff members who had more sick personal days in their bank that far exceeded the days that those staff members had off. (AC ¶ 91) On or around September 1, 2019, Plaintiff was assigned a new class that was made up of very low functioning and high maintenance students. (AC ¶ 94) From on or about September 2019 to March 2020, Plaintiff was the only classroom teacher at P369@P67K to have four (4) out of six (6) students assigned to 1:1 paraprofessional. (AC ¶ 95)

Furthermore, from September 2019 to March 2020, two (2) of Plaintiff's assigned paraprofessionals had a history of suspensions as a result of using excessive force. (AC ¶ 96) That same school year, from September 2019 to March 2020, Plaintiff was the only Special Education teacher on the fifth floor who had students in pull-ups and students who were being toilet trained, yet there was no bathroom on the fifth floor. Though Plaintiff's class was on the fifth floor with no bathroom he had a student who required thirty (30) minute toileting schedule and another student requiring an hourly toilet schedule. As a result, Plaintiff had a student defecate in the classroom garbage pail and in the auditorium. (AC ¶ 97) Upon information and belief, all of the employees of Defendant DOE, including but not limited to Plaintiff's paraprofessional, were notified in a timely fashion whether or not they were approved for their accommodation to work from home. (AC ¶ 105)

Here, the amended complaint establishes numerous examples of a difference in treatment, specifics sets forth numerous examples, mentions a teach by name, and numerous occasions stated that he was the only teacher treated that way or that he was the only senior teacher treated that way.  On a motion to dismiss, Plaintiff has alleged a plausible claim of selective enforcement.

## POINT V

### THE AMENDED COMPLAINT STATES A CAUSE OF ACTION FOR DISCRIMINATION

**a. Plaintiff has plead a plausible claim for religious discrimination under 1983, Title VII, SHRL and CHRL.**

To state a claim of religious discrimination pursuant to § 1983, Title VII, and SHRL, a plaintiff must allege that, (1) he belongs to a protected group, (2) he was qualified for his position; (3) he was subjected to adverse action; and (4) the adverse action occurred under circumstances giving rise to an inference of religious discrimination. *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011); *Ruiz v. County of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). Under the CHRL, a plaintiff must be subjected to unequal treatment based on his protective characteristics. Even though the CHRL construes claims more broadly than viewed under Title VII and the SHRL, the pleadings nonetheless must include facts that suggest Plaintiff was treated less well because of his protected class.

In this regard, the NYCHRL explicitly requires an independent liberal construction analysis in all circumstances. "The Court of Appeals has emphasized that the Restoration Act's amendment of Section 8-130 of the [NY]CHRL was enacted to ensure the liberal construction of the [NY]CHRL by requiring all provisions of the [NY]CHRL be construed "broadly in favor of discrimination plaintiffs." *Bennett,* 92 A.D.3d 29*; Albunio v. City of New York*, 16 N.Y.3d 472, 477, 922 N.Y.S 2d 244 [2011]. The New York City Human Rights Law was intended to be more protective than the state and federal counterparts. As this court recently stated in *Jordan v Bates Adv. Holdings, Inc.*, (11 Misc 3d 764, 770-771 [Sup Ct., NY County 2006])

As a preliminary matter Plaintiff's claims are timely due to the continuous nature of the claims (see Point II). Plaintiff's allegations regarding discrimination are sufficient to satisfied the motion to dismiss standard because taken in the aggregate show that he was treated less favorable than his counterparts, unfounded disciplinary letters, discriminatory comments, and unfair work

assignments (AC ¶13-18, 26, 30, 41-43, 51, 61-63  Thus, in the case at hand, Plaintiff has satisfied

his burden by pleading religious discrimination and that he was treated less well than others The

terms of his employment were different than his other counterparts who were not Jewish Orthodox,

thus this Claim for Relief should not be dismissed.  For the unequal treatment see *Point IV* supra.

### 1.  Plaintiff Suffered an Adverse Employment Action

Defendants primarily argument is that Plaintiff has not suffered an adverse employment

action. To constitute an adverse employment action in the context of a discrimination claim, an

action must cause "a materially adverse change in the terms and conditions of employment."

*Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir.2008), accord *Patane,* 508 F.3d at 112. It has

been held that under certain circumstances, the receipt of undesirable assignments may rise to the

level of an adverse employment action. *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir.2004)

(plaintiff's receipt of "disproportionately heavy workload" constitutes a materially adverse

employment action). Under the CHRL, the standards are lower.  Under the CHRL, a plaintiff must

plausibly plead facts showing that "[his] employer treated [him] less well, at least in part for a

discriminatory reason." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 110, n.

8 (2d Cir. 2013) (citing *Williams v. NYC Hous. Auth.*, 61 A.D.3d 62 (1st Dep't 2009)). Also, under

the CHRL, plaintiff "is not required to show an adverse employment action…" *Wells v.

Achievement Network*, No. 18 Civ. 6588 (KPF), 2021 U.S. Dist. LEXIS 39828, 2021 WL

810220(S.D.N.Y. Mar. 2, 2021), *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102,

110 (2d Cir. 2013). Plaintiff burden is to "show differential treatment— that he is treated 'less

well' — *because* of a discriminatory intent.  In light of the standard on a motion to dismiss, Plaintiff

has adequately pleaded a cause of action for religious discrimination under the standards set forth

above.

For example, the allegations are that Defendants failed to provide a working computer (AC ¶ 27); biased evaluation (AC ¶ 30); denied a transfer(AC ¶ 34); not provided a class room key (AC ¶ 36); an unfounded disciplinary letter (AC ¶ 40); deliberately placing disruptive students in his class (AC ¶ 42); denied para professionals (AC ¶ 45); the paraprofessionals that were assigned were instructed not assist certain student whenever he was in crisis; (AC ¶ 46); Plaintiff's classroom was ransacked (AC ¶ 48-49); Plaintiff was relocated to another site for summer school in 2018, for the second year in a row (AC ¶ 51); Plaintiff was denied a password for the Unique Curriculum, in comparison to the fully equipped technology and passwords that were assigned to all other teachers except for Plaintiff (AC ¶ 56);  extracurricular activities for his students were not provided, in contrast to most of the other teachers' schedules (AC ¶ 57); assigned an exceptionally challenging class with students who were not on his original roster. Plaintiff was not made aware of these particular students until they arrived in his room and were left there unattended (AC ¶ 58), student was in the middle of a crises with no para support.  (AC ¶ 60-62) Plaintiff was kept isolated and deliberately not scheduled for grade level meetings. (AC ¶ 63) Plaintiff's position was undermined in not having any input in the development of an IEP (AC ¶ 67); excluded for school trips and denial of iPads (AC ¶ 81-82); given exceptionally challenging classes; he was the only Special Education teacher with a classroom on the floor without a restroom; initially denied a remote accommodation for the 2020-21 school year;  assigned a very difficult class for summer school (AC ¶ 85-86);  relocated to another site for summer school 2019, for the third year; the only senior Special Education teacher to be moved to another site for summer school (AC ¶ 94); assigned a new class that was made up of very low functioning and high maintenance students (AC ¶ 95); was the only classroom where two (2) of Plaintiff's assigned paraprofessionals had a history of suspensions as a result of using excessive force (AC ¶ 97). That same school year, from

11

September 2019 to March 2020, Plaintiff was the only Special Education teacher on the fifth floor who had students in pull-ups and students who were being toilet trained, yet there was no bathroom on the fifth floor. Though Plaintiff's class was on the fifth floor with no bathroom, he had a student who required a thirty (AC ¶ 30) minute toileting schedule, and another student requiring an hourly toilet schedule. As a result, Plaintiff had a student defecate in the classroom garbage pail and in the auditorium. (AC ¶ 98)

Clearly, the above are concrete actions amount to adverse employment actions under Title VII, SHRL, 1983 and the CHRL. The conduct set forth above plausibly states adverse employment actions under Title VII, 1983, SHRL and CHRL.

### 2. Plaintiff has pleaded that there is an inference of discrimination related to his religion

A plaintiff could show an inference of discrimination based upon an employer's preferential treatment towards a similarly situated employee outside of the plaintiff's protected class, if properly pled. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Here, Plaintiff pleaded in detail how he has been treated differently as opposed to other counterparts who are not orthodox practicing Jew and to others who had not complained about discrimination. See *Point IV* supra.

### POINT VI

### THE CONDUCT IN AGGREGATE IS A
### PLAUSIBLE HOSTILE WORK ENVIRONMENT CLAIM

In evaluating a hostile work environment claim, the fact finder must consider All the circumstances. *Oncale v. Sundowner Offshore Services, Inc.*, 118 S. Ct. 998 (1998); *Henson v City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982). [T]he district court should not carve the work environment into a series of discrete incidents and then measure the harm adhering in each episode.

Instead, the trier of fact must keep in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate and that the work environment created thereby may exceed the sum of the individual episodes; *Smith v. Kmart*, 1996 WL 780490 at *8 (using a totality of circumstances standard in age harassment case). There is no threshold magic number that courts will apply to determine whether the conduct meets the severe or pervasive standard. *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993): *Vance v. Southern Bell Tel. & Tel. Co*., 863 F.2d 1503, 1511 (11th Cir. 1989). The courts have applied several general principles. First, courts consider the number of incidents as a factor, but this is not alone determinative. *Woods v. Graphic Communications, Union Local* 747, 925 F.2d 1195, 1201 (9th Cir. 1991); (finding six statements during approximately two years of employment sufficient for a hostile work environment).

The New York City Human Rights Law (NYCHRL) is more protective of employees. Unlike its federal and state counterparts, it does not require a showing that the alleged harassment is "severe" or "pervasive". Rather, it only requires a plaintiff to show that his/her employer treated them less well than similarly situated employees, at least in part for discriminatory reasons. Relevant factors to consider in determining whether an environment is sufficiently hostile include: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. In *Williams*, as in other terms-and-conditions of employment cases, whether the employee has proven by a preponderance of the evidence that he has been treated less well than other employees based on a discriminatory purpose, the **Williams court stated that all harassing conduct based on protected class status is actionable except for conduct that a "reasonable victim of discrimination would consider 'petty slights and trivial**

**inconveniences**.' *Williams v. New York City Housing Authority*, 61 A.D.3d 62 (1st Dep't 2009)

Here, Plaintiff has satisfied his burden pleading that he was subjected to a hostile work because he had pleaded that the continuous treatment he was subjected to was due to his religion and retaliation.

For example, Plaintiff received direct comments concerning his religion; he received threats regarding his job; he was unable to get the classroom key (AC ¶ 32); he had unfounded-disciplinary letter (AC ¶ 40); disruptive students (AC ¶ 42); denied para professionals (AC ¶ 45); para told not to assist;  berated in front of his students and paraprofessionals by Coordinator Ms. Tobito (AC ¶ 50); classroom was ransacked(AC ¶ 48-49);  threatened with physical and bodily harm for parking in the school lot by the Head Custodian (AC ¶ 53);  site for summer school 2018, for the second year in a row (AC ¶ 51);   denied a password for the Unique Curriculum, in comparison to the fully equipped technology and passwords that were assigned to all other teachers except for Plaintiff (AC ¶ 56);  schedule/program card which did not include any extracurricular activities for his students, in contrast to most of the other teachers' schedules (AC ¶ 57);  assigned an exceptionally challenging class with students who were not on his original roster (AC ¶ 58);  no para support (AC ¶ 62); Plaintiff was kept isolated and deliberately not scheduled for grade level meetings (AC ¶ 63); Plaintiff's position was undermined in not having any input in the development of an IEP (AC ¶ 67); excluded for school trips and denial of iPads (AC ¶ 81-82); assigned a very difficult class schedule for summer school wherein it was required he have four (AC ¶ 4) paraprofessionals and only received two (AC ¶ 85); Plaintiff was relocated to another site for summer school 2019, for the third year in a row. Plaintiff was the only senior Special Education teacher to be moved to another site for summer school (AC ¶ 86, 94). On or around September 1, 2019, Plaintiff was assigned a new class that was made up of very low functioning and high

maintenance students (AC ¶ 95). From on or about September 2019 to March 2020, Plaintiff was the only classroom teacher to have four (4) out of six (6) students assigned to 1:1 paraprofessional. (AC ¶ 96) Furthermore, from September 2019 to March 2020, two (2) of Plaintiff's assigned paraprofessionals had a history of suspensions as a result of using excessive force (AC ¶ 97). That same school year, from September 2019 to March 2020, Plaintiff was the only Special Education teacher on the fifth floor who had students in pull-ups and students who were being toilet trained, yet there was no bathroom on the fifth floor. Though Plaintiff's class was on the fifth floor with no bathroom he had a student who required thirty (30) minute toileting schedule and another student requiring an hourly toilet schedule. As a result, Plaintiff had a student defecate in the classroom garbage pail and in the auditorium. (AC ¶ 98) Numerous other conduct directed at Plaintiff has been set forth in the amended complaint.  Like *Massaro* supra, when considering the conduct in aggregate, states a plausible claim for a hostile work environment under Title VII, 1983, SHRL and CHRL based on religion and retaliation.

## POINT VII

### PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM STATES A CAUSE OF ACTION

#### A. Plaintiff's First Amendment Retaliation Claim States a Cause of Action

In the case at hand, Plaintiff has pleaded that he complained about the illegalities committed by the Board of Education.   Since his speech was done as a private citizen, as it was not required under his school duties, his speech was protected, or at the very least, he has plead facts to plausibly claim a cause of action.

Public employees do not forfeit their First Amendment rights by virtue of their acceptance of government employment.  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  In Pickering, the Court held that to sustain a claim of retaliatory discharge based upon infringement of free

speech, a government employee must establish, by a preponderance of the evidence, that what he said or did was a matter of public concern, and that his speech was a motivating factor in the adverse action taken by the government employer. See 391 U.S. at 572-73.

In applying these principles, this Court has enunciated the parties' respective burdens upon a public employee's claim of employer retaliation for the exercise of First Amendment rights. A public employee, must prove that: (1) she engaged in constitutionally protected speech because he spoke as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) the speech was a `motivating factor' in the adverse employment decision. *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 106 (2d Cir. 2006), overruled on other grounds by *Appel v. Spirfdon*, 531 F.3d 138, 140 (2d Cir. 2008).

Thus, in order to survive a motion to dismiss a complaint, "a plaintiff asserting First Amendment retaliation claims must advance allegations ... (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Ruotolo* at 492.  It follows that "whether an employee's speech addresses a matter of public concern is a question of law for the Court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir.1999) (citing *Connick v. Myers,* 461 U.S. 138, 147-48 and n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

### i.    Plaintiff's Complaints were Protected Speech

Whether an employee's speech addresses a matter of public concern rather than one of purely private interest "must be determined by the content, form, and context of a given statement as revealed by the whole record."  *Connick v. Myers*, 461 U.S. 138, (1983) Connick, 461 U.S. at

147-48. To fall within the realm of "public concern," an employee's speech must "relate to a ... matter of political, social, or other concern to the community." Id. at 146.

Accordingly, Plaintiff satisfies the Pickering's threshold requirement. See *O'Connor v. Steeves*, et al., 994 F.2d 905, 913-14 (1st Cir.1993) (noting that "where public employee speaks out on topic which is clearly a legitimate matter of inherent concern ... the court may eschew further inquiry to employee's motives as revealed by 'form and context' of the expression"); accord *Breuer v. Hart*, 909 F.2d 1035, 1039 (7th Cir.1990)  Public concern "is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication. *San Diego v. Roe*, 543 U.S. 77 at 83-84. (2004).

A complaint was submitted by Plaintiff to the United States Department of Education, Office of Civil Rights, (Case No. 02-19-1194), alleging that the staff at the New York City Department of Education (hereinafter "NYCDOE") District 75 Public School 369 at Public School 67 discriminated against students in Plaintiff's special education class, on the basis of their disabilities, by failing to provide students with the following related aids and services during school year 2018-2019, mandated occupational therapy (OT) sessions, substitute one-to-one paraprofessionals, the use of iPads, failing to promptly address a radiator leak and resulting flood in Plaintiff's classroom, excluding students from a School trip to a Christmas tree lighting ceremony, and failing to invite NYCDOE administrators to a publishing party held in Plaintiff's classroom during school year 2018-2019. (AC ¶ 87)

On or around August 15, 2019, Plaintiff submitted an additional complaint form to the United States Department of Education, Office of Civil Rights to add to the above- mentioned complaint (Case No. 02-19-1194). (AC ¶ 88) The new complaint reinforced Plaintiff's complaints of, including but not limited to, the grade changing allegations by way of adding additional

information. Upon information and belief, Ms. Yolanda DeJesus, a paraprofessional working at P369@P67K reported that Defendant Collins tampered with both student grades and test scores. (AC ¶ 89)

Plaintiff was speaking in a private capacity in the sense that his duties as a teacher did not require him to file a complaint with the Department of Justice. See *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1959-60, 164 L. Ed. 2d 689 (2006) (assistant district attorney was not speaking as a citizen when his expressions were made "pursuant to his duties"). The speech in this case was not indispensable to Plaintiff's role as a teacher, a "means to fulfill" her responsibilities, or "undertaken in the course of performing" her job, id. See also *Garcetti*, 547 U.S. at 422.  Second, Plaintiff's speech arguably related to an issue of public concern, not providing services to disabled students and illegally changing student's grades to allow the school to appear better to the public, in essence, misleading the public and the NYS Department of Education and the NYC Department of Education.

Here, viewed in the light most favorable to the Plaintiff acted as a private citizen because complaining to the US Dept of Justice regarding illegalities of the school was not part of his duties as a teacher. *Albright v. Oliver*, 510 U.S. 266,  1994).  In addition, Plaintiff's was acting as a citizen as his duties as a teacher did not include making those complaints to this outside entity. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

### ii.    Plaintiff's Complaints Were Causally Related

The Court is respectfully referred to Point    pages of this memorandum of law regarding the applicable case law.  See Point VI of this brief.

### POINT VIII

### PLAINTIFF STATES A CLAIM FOR RETALIATION

18

The Second Circuit set forth the standards to establish a prima facie case of retaliation, where a party must show that: (1) the employee was engaged in protected activity-this is conceded by the DOE, (2) the employer was aware of the activity-this is conceded by the DOE since it is not argued, (3) an adverse employment action occurred concerning Plaintiff-again Defendants do not argue that in its motion and (4) a causal connection exists between the protected activity and the adverse employment action.

### 1.  The Employee Was Engaged In Protected Activity

Here, Plaintiff pleaded protected activity. On or around March 24, 2016, Plaintiff was absent as a result of the Holiday of Purim. Subsequently after the Holiday of Purim, Plaintiff received a biased and unfair evaluation on or around April 2016. Plaintiff complained to the Principal at the time, Defendant Giuliani regarding Defendant Collins' cruel treatment of Plaintiff which was evident in her harsh administration and biased evaluation of. (AC ¶ 30)

From December 4, 2018, to on or around April 2019 Plaintiff sent notarized letters to Defendant Collins and Defendant Dalrymple mentioning instances of their antisemitic actions toward Plaintiff and included the issues relating to Plaintiff's religious observance, observations/rating, summer school displacement, and parking. Plaintiff never received a written response to those letters from Defendant Collins and Defendant Dalrymple. The letters that were sent were always accompanied by a written response and email from the New York City Department of Education Office of Equal Opportunity and Diversity Management stating that an anonymous person sent a complaint of discrimination on Plaintiff's behalf.  (AC ¶ 69) Similarly, Plaintiff filed his office of civil rights complaint sometime early in 2019 then again August 15, 2019. (AC ¶ 87-89)

In addition, Plaintiff filed a charge of discrimination filed with the EEOC in February 2020. Plaintiff has also filed this suit.

### 2. A Causal Connection Exists Between The Protected Activity And The Adverse Employment Action.

Even assuming arguendo that the Court finds there is no continuing violation, the Court should consider all of the conduct from 2015 as relevant in determining whether there was a causal connection In the recent case of *Dr. Joseph Irrera v. University of Rochester*, the Second Circuit reversed and reinstated Irrera's retaliation claim by setting forth there is no bright-line rule to show a causal connection. See *Dr. Joseph Irrera v. University of Rochester*. 859 F.3d 196 (2nd Cir. 2017). See also *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir.1999). This Court explained that the Supreme Court provided scant guidance for drawing that elusive line and that judges should rely on their experience, common sense, and to consider the context in which a claim is made. In the *Irrera* case, there was "more than a two-year temporal relationship between Irrera's alleged protected activity in February 2012, and the defendants' alleged denial of a paid internship and/or provision of negative references in or after May 2014", which the District Court had held insufficient to suggest a causal relationship given the time that elapsed. The Second Circuit accordingly mandated reversal of that decision. Id.

Indeed, this Court reinforced the idea that there is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and allegedly retaliatory action. *Massaro v. Bd. of Educ. of City Sch. Dist. of N.Y.* No. 18-2980-cv (2nd Cir. decided May 21, 2019) in a Summary Order reversing the District Court on the issue of causation In the context of a school calendar, judicial "experience and common sense," *Irrera*, 859 F.3d at 198 (quoting Iqbal, 556 U.S. at 679), permit the Court to recognize that May to August is summer break. In that context, it is plausible

that August 2013, the start of a new semester, was the school personnel's earliest opportunity to retaliate against Massaro following the dismissal of her 2011 lawsuit. See *Point VI* of this brief.

Here is a summary of only some of the conduct directed at Plaintiff. Defendants were in possession of Plaintiff's classroom key as Plaintiff was required to immediately return the key. Plaintiff's students were often locked out of the room for periods of over thirty (30) minutes during the winter with their coats and book bags on the floor and when Plaintiff was supposed to be conducting classroom instruction. (AC ¶ 36) Plaintiff was forced to cancel three (3) Professional Development Workshops as a result of a rescheduled hearing. (AC ¶ 37); Plaintiff received a disciplinary letter as a result of the hearing for insubordination. (AC ¶ 40)

Plaintiff was left with one (1) paraprofessional, Mark Samuels (hereinafter "Samuels"). Samuels came from Special Education program. Plaintiff asked Defendant Collins if he would receive another paraprofessional as his student M.B. required a 1:1, Defendant Collins' response was, "no, this is a 6:1:1 class and he (M.B.) does not get a para". This prevented Plaintiff and Samuels from conducting rotations in class as Samuels could not assist with classwork as he was supposed to work with M.B. one on one. (AC ¶ 45) To make matters worse, Defendant Collins instructed Samuels not to assist with M.B. whenever he was in crisis. Often times, Samuels refused to do his daily job and take M.B. to lunch or to the nurse for his medication and would often times spend his day in Defendant Collins' office. Plaintiff frequently had to deal with M.B. on his own while trying to maintain his class. (AC ¶ 46)

Plaintiff's classroom was ransacked. (AC ¶ 48) Plaintiff's classroom furniture was rearranged and thrown about his room. and Plaintiff's computer was damaged. Paul had full access to Plaintiff's classroom after school hours as the Custodian's helper. Plaintiff would often come into work in the morning to find student files opened or misplaced, missing or broken supplies

which included the students' manipulatives that were used to help Plaintiff's students' learning abilities. (AC ¶ 49)  On or around March 2, 2018, Plaintiff was berated in front of his students and paraprofessionals by Coordinator Ms. Tobito regarding cleaning Plaintiff's wall for the smart board installation, (AC ¶ 50)  At the end of the school year, on or around June 2018, Plaintiff was relocated to another site for summer school 2018, for the second year in a row. Plaintiff was the only senior Special Education teacher to be moved to another site for summer school. (AC ¶ 51) Plaintiff had to travel to the new school by bike, while leaving his car at his year-round school. The Administration was aware of the difficulty of parking surrounding other school locations. (AC ¶ 52)

On or around August 9, 2018, Plaintiff was threatened with physical and bodily harm for. (AC ¶ 53), Plaintiff was denied a password for the Unique Curriculum, in comparison to the fully equipped technology and passwords that were assigned to all other teachers except for Plaintiff. (AC ¶ 56) Plaintiff's students were excluded from extracurricular activities such as gym, music, technology, and art class. (AC ¶ 57) Plaintiff was assigned an exceptionally challenging class with students who were not on his original roster. (AC ¶ 58)   Defendant Collins continued to assigned paraprofessionals to Plaintiff and directing them not to support Plaintiff. Plaintiff's paraprofessional Mr. Ibrahim refused to assist with a student that he was assigned to and communicated to Plaintiff that he was specifically told not to help Plaintiff, despite Mr. Ibrahim having more success with that particular student. (AC ¶ 62)

From on or about September 2018 to December 2018, Plaintiff was kept isolated and deliberately not scheduled for grade level meetings, as they were always scheduled when Plaintiff had a teaching conflict. (AC ¶ 63) Plaintiff's students were denied possession of iPads, despite the

other teachers having iPads for their students and even though one of Plaintiff's students short term goal objective requires the student to make use of an iPad to perform writing tasks. (AC ¶ 65)

Plaintiff's position was undermined in not having any input in the development of an IEP goal and prevented from conducting his role as the teacher on record as it pertains to the legal requirement of goals being written. (AC ¶ 67)

Defendants retaliated against Plaintiff. criticizing Plaintiff in front of all of Plaintiff's students and staff. (AC ¶ 75)  Again, on March 25, 2019 Defendant Collins entered Plaintiff's temporary classroom in rage stating, "what are you kids doing here", Defendant Collins then turned to Plaintiff and stated, "you need to see me later with an explanation". (AC ¶ 76) On or around March 2019, Plaintiff's paraprofessional Carmen Ortega noticed that Plaintiff's student report card grades were tampered with. (AC ¶ 77) Plaintiff was not told that there was an upcoming trip as he is mostly excluded from pertinent information that Plaintiff's students are then penalized for. (AC ¶ 81) denied iPads, (AC ¶ 82-82), Plaintiff was assigned a very difficult class for summer school wherein it was required he have four (4) paraprofessionals and only received two (2). Defendant Collins and Defendant Dalrymple were responsible for the assignment of students and the staff. (AC ¶ 85) Again, Plaintiff was relocated to another site for summer school 2019, for the third year in a row. Plaintiff was the only senior Special Education teacher to be moved to another site for summer school. Newly hired teachers and/or teachers with less seniority were afforded the ability to remain at their year-round school. This was extremely embarrassing for Plaintiff as a senior Special Education teacher. (AC ¶ 86) During the summer school year, Plaintiff had four (4) students requiring 1:1 paraprofessional, although Plaintiff only had two (2) paraprofessionals to work with. (AC ¶ 90) On or around September 1, 2019, Plaintiff was assigned a new class that was made up of very low functioning and high maintenance students. (AC ¶ 94) From on or about

September 2019 to March 2020, Plaintiff was the only classroom teacher at P369@P67K to have four (4) out of six (6) students assigned to 1:1 paraprofessional. (AC ¶ 95) Furthermore, from September 2019 to March 2020, two (2) of Plaintiff's assigned paraprofessionals had a history of suspensions as a result of using excessive force. (AC ¶ 96)  That same school year, from September 2019 to March 2020, Plaintiff was the only Special Education teacher on the fifth floor who had students in pull-ups and students who were being toilet trained, yet there was no bathroom on the fifth floor. Though Plaintiff's class was on the fifth floor with no bathroom he had a student who required thirty (30) minute toileting schedule and another student requiring an hourly toilet schedule. As a result, Plaintiff had a student defecate in the classroom garbage pail and in the auditorium. (AC ¶ 97)

Here, since at this juncture Plaintiff's burden is not evidentiary, but is just to plead enough facts to state a claim to relief that is plausible on its face, and Plaintiff has satisfied his burden. Twombly, Id.  Further, this Circuit has held that on a motion to dismiss, the court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor.  See *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

**(1) Plaintiff Suffered An Adverse Employment Action**

Plaintiff suffered an adverse employment action.  It should be noted that Plaintiff does not contest or argue the issue pertaining to an adverse employment, however in an abundance of caution, Plaintiff will briefly address the issue. The test under both the federal, state and NYC law is whether the actions taken "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Under the CHRL, a plaintiff need only show that the conduct was "reasonably likely to deter a person from engaging in protected activity." See *Rasco v. BT Radianz*, 05 Civ. 7147(BSJ (SD NY Decided March 17, 2009).

Like *Massaro s*upra, when considering the conduct in aggregate, could dissuade a reasonable person from engaging in protected activity. During the time he was engaged in protected activity, Plaintiff was treated differently, as explained supra, specifically, since 2018 in terms of his employment. This conduct was continuous in nature and was during his protected activity.

In *Massaro*, the Second Circuit evaluated the case and in the context of retaliation and hostile work environment and determined that the Court was to see all the facts in the aggregate in the light most favorable to the Plaintiff before rendering a decision.   Here given all the events that occurred during Plaintiff's protected activity as pleaded in the complaint, are sufficient to plea a plausible claim for retaliation.   For these reasons, Plaintiff has met the standards under Title VII, 1983, SHRL and the CHRL.

Thus, his claims should not be dismissed.   Accordingly, the Defendant motion to dismiss should be denied in its entirety.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court denies Defendant's motion to dismiss and grant and any other relief that this Court seem appropriate.

Dated:  Brooklyn, New York

November *15,* 2021                                             Respectfully submitted,

Abraham M. Freud
*Plaintiff Pro Se*
333 Argyle Road
Cedarhurst, NY 11516
917-402-4721
abefreud1@gmail.com